Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 626 | **DATE** | 4/16/2003 |
| **CASE TITLE** | EOLAS TECHNOLOGIES, INC. vs. THE REGENTS OF THE UNIVERSITY OF CA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (329-1 and 341-1) for partial summary judgment with respect to willfulness is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 17 2003 | |
| | Notified counsel by telephone. | date docketed | 347 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| WD | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EOLAS TECHNOLOGIES, INCORPORATED, and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Plaintiffs, v. MICROSOFT CORPORATION, Defendant. | No. 99 C 0626 Judge James B. Zagel |

DOCKETED APR 17 2003

## MEMORANDUM OPINION AND ORDER

Microsoft seeks partial summary judgment with respect to willfulness, arguing that plaintiffs have, even after considerable effort and time, still failed to present a single genuine issue of material fact with respect to willfulness. This is not the first time this court has visited the issue. On March 9, 2001, I considered plaintiffs' request to expand its pleadings to include willful infringement and only partially granted the request, allowing plaintiffs to add a willfulness allegation based upon Microsoft's continued making of Internet Explorer ("IE"). In doing so, I limited plaintiffs' willfulness claim to only post-suit activity, reasoning that plaintiffs' evidence of pre-suit knowledge, specifically Microsoft's knowledge of a press release regarding its pending patent that would later become U.S. Patent No. 5,838,906 (the '906 patent") and Microsoft's resulting concern, was "not enough to justify a finding of willfulness." In allowing plaintiffs to add a post-suit willfulness claim, I cautioned that "[t]o prevail upon it might be difficult because [plaintiffs] will, I think, have to show that Microsoft's defenses are frivolous."



Now, in opposition to Microsoft's motion, plaintiffs assert that they have come a long way since March 2001. In their opposition to Microsoft's motion, plaintiffs have laid out a number of facts which allegedly create genuine issues of material fact, which are:

1. That Microsoft was repeatedly approached by plaintiffs regarding licensing of the '906 patent's technology ;

2. Even though Microsoft did not express interest, it was "internally scrambling to include it in its [IE] 3.0 browser";

3. Before releasing IE 3.0, Microsoft had been doing very badly in the browser market and thus saw the '906 patent technology as a way to beat Netscape's hold on the market;

4. During its work on IE 3.0, Microsoft had access to the '906 technology and even saw a demonstration of it;

5. In January 1995, a copy of the '906 patent application was given to Spyglass, a company that had just licensed its Mosaic browser code to Microsoft and working with Microsoft on its browser, and Spyglass and Microsoft "specifically discussed inclusion of support for embedded interactive program objects in Microsoft's IE browser under development";

6. Acknowledging that the '906 patent might be a "very big deal" and "very big problem" and wondering if there might be ramifications for IE, Microsoft circulated a news release regarding the pending '906 patent amongst senior management, including Ben Slivka, who was in charge of IE at that time;

7. The matter was handed over to Kate Sako in Microsoft's legal department, and subsequently, Mr. Slivka halted email communications regarding the press

2

release stating that Ms. Sako "is on the case-no more email on this topic please";

8. Bill Gates was not only aware of the '906 technology and discussed an embodiment of the '906 patent with Mr. Slivka, Dr. Michael Doyle, inventor of the'906 patent, emailed Mr. Gates directly and urged him to license Eolas' Tcl'Tk browser plug-in, noting that an "additional benefit is that this product is fully licensed under the pending University of California plug-in/applet patent";

9. In August 1996, Microsoft launched IE 3.0 "with the '906 technology included," and was remarkably successful with it;

10. Since this lawsuit was commenced, Microsoft has continued its infringement;

11. Microsoft's arguments to this court that the '906 claims are not patentable and its arguments to the Patent and Trademark Office ("PTO") that the '906 claims are patentable but that Microsoft was the first to invent them are inconsistent.

Before discussing the merits of Microsoft's motion, I am disregarding (for the purpose of this motion) some of these alleged facts. First, I am disregarding allegations 2, 3, 9 and 10, because even if accepted as true, they do not imply any post-suit willfulness. Only allegation 10 addresses conduct by Microsoft after plaintiffs filed suit, and it only alleges that Microsoft continued its alleged infringing activity, which alone does not allege willfulness. As will be further discussed, an allegation of post-suit willfulness must speak to whether Microsoft has litigated this suit in bad faith, not whether Microsoft has continued its allegedly willful pre-suit activity after the suit was filed. I am also disregarding allegations 6 and 7 because those allegations, which have not been altered, nor has there been additional evidence to bolster them,

3

have already been considered by this court in my March 9, 2001, opinion. After considering these allegations, I stated that all they showed was that "Microsoft knew about the pending patent, was concerned about it, and put the matter before its lawyers" and that this was "not enough to justify a finding of willfulness." Even taken with the allegations that remain from the above list, they do not change my original determination.

Therefore, what remains are allegations 1, 4, 5, 8 and 11. With respect to allegation 1, it is undisputed that Martha Luehrmann, the individual in charge of licensing the '906 technology for the University of California, contacted Chris Walker at Microsoft about licensing the '906 technology via email. In that email, Ms. Luehrmann described "software for embedding interactive program objects within hypermedia documents." Plaintiffs argue that this is evidence that Microsoft was well aware of the '906 technology before the patent issued. However, the email in question makes no mention of a patent pending, nor does it lay out the specific claims of the '906 patent. All this email reveals is that Microsoft knew that the University of California had created software with the capability of embedding interactive objects within a web page, and this amounts to nothing more than what was revealed in the 1995 press release, which I have already determined does not show willfulness. Kevin Shields, who responded to Ms. Luehrmann's email, stated in his declaration that the content of his response was "typical of the intentionally polite response that I tried to convey to all third parties that sent unsolicited information to Microsoft." Mr. Shields also declared that he never forwarded any of the information in these emails to the IE development team, any other development team or any other company. In response to Mr. Shields' declination of Ms. Luehrmann's offer, Ms. Luehrmann asked for and received information regarding Continuum Productions, Inc. ("Continuum"), a company founded by Mr. Gates but wholly independent of Microsoft.

4

This brings us to allegation 4. The information allegedly received by Microsoft and the demonstration at issue involve Continuum only. After Microsoft declined to look into the '906 technology, Ms. Luehrmann approached Continuum, and Sam Edge, the Director of Technology for Continuum, executed a secrecy agreement on behalf of Continuum and attended a demonstration at the University of California, after which Continuum declined any further interest. Plaintiffs allege, based on the testimony of Dr. Doyle, that (1) an unnamed Microsoft engineer also attended the demonstration; and (2) Mr. Edge said that he was planning to meet with Mr. Gates about it. Plaintiffs also allege that the information shared with Continuum was also shared with Microsoft, because the two companies are connected.

Possible hearsay issues with Dr. Doyle's testimony notwithstanding, Mr. Edge has flatly denied that (1) a Microsoft engineer was present at the demonstration; (2) he ever communicated with Microsoft about the demonstration or any information given to him by plaintiffs; and (3) he ever intended to or ever did discuss with Mr. Gates the '906 technology. Microsoft was not a party to the secrecy agreement executed by Mr. Edge, as confirmed by Ms. Luehrmann's deposition testimony, and it is undisputed that at this time, Continuum was completely independent of Microsoft. Mr. Edge has declared that he honored the secrecy agreement in full. Plaintiffs have not provided any other evidence that a Microsoft engineer was present at the demonstration, nor provided any additional evidence that Mr. Edge planned to or met with Mr. Gates regarding the '906 technology. Even if I were to accept Dr. Doyle's testimony that Mr. Edge told him that he planned to meet with Mr. Gates about the demonstration, all this would show is that Mr. Edge planned to meet with Mr. Gates, not that he actually did.

Dr. Doyle, in his deposition, admitted that during this presentation, he understood that he was talking "to Continuum, not to Microsoft." While he also stated that he now believed that

5

Continuum is now a subsidiary of Microsoft, it is clear from the testimony that at the time of the University of California demonstration, the only thing he understood Continuum and Microsoft to have in common was Mr. Gates. Ms. Luehrmann testified that she believed Mr. Edge to be "Microsoft's stalking [sic] horse," but in response to Microsoft's question "[d]id you do any research into who Continuum Productions was," she stated "[n]o. I should have, but I didn't." She admitted that while she was operating under the assumption that Microsoft and Continuum were working together, she "[d]idn't know." It is undisputed that Microsoft and Continuum were wholly independent of each other and thus, Ms. Luehrmann's faulty assumptions about their connection does not prove that any of the information given to Continuum about the '906 technology ever reached Microsoft.

With respect to allegation 5, I have already considered the testimony of Timothy Krauskopf in connection with willfulness. In my October 18, 2002, opinion, I stated that Mr. Krauskopf's testimony only showed that "he informed Mr. Reardon of Eolas and the '906 patent application's existence at least two times." The only new allegation added is that when Mr. Krauskopf met with Dr. Doyle, Dr. Doyle gave him "a copy of the '906 patent application including the patent claims." Even if I accept this as true, there are two problems. First, when asked if he had "any conversations with Reardon or anyone else at Microsoft about the particulars of the Doyle invention with reference to the inclusion of embeddable objects in Web pages," Mr. Krauskopf responded that he could not recall of any, and Mr. Krauskopf has never testified that he ever did discuss with anyone at Microsoft the details of the '906 patent application, nor could he recall if he was ever asked for a copy of the application. Plaintiffs have not provided new evidence to refute that testimony. Second, the '906 patent application as it was in 1995 was

rejected as unpatentable over prior art, and thus, the patent application that was ultimately issued was very different from the version allegedly given to Mr. Krauskopf.

With respect to allegation 8, the email sent by Dr. Doyle to Mr. Gates was answered not by Mr. Gates, but by Peter Plamondon, a Group Manager in the .NET Evangelism group. In his declaration, Mr. Plamondon states that his job is "to promote adoption of Microsoft technology among software developers outside of Microsoft," and that he has "never been involved in evaluating third party technology for potential use by Microsoft." Mr. Plamondon declares that the email was misdirected to him, and he merely responded with his usual encouragement to use Microsoft technology or write programs for Microsoft platforms. Plaintiffs provide no evidence that Mr. Gates himself ever received the email or saw it. With respect to the email from Mr. Gates to Mr. Slivka that allegedly shows that these men discussed an early commercial embodiment of the '906 technology, the only thing Mr. Gates wrote was "[a]mazing to see how competitive this [sic] - people jumping in to provide software in a FREE category!!" This email exchange occurred three weeks after the 1995 press release, which I have already discussed. These emails do not show anything more than an awareness that the '906 patent application existed, which I have already stated is not enough for willfulness.

Finally, with respect to allegation 11, I have seen some seemingly inconsistent statements and positions from both parties throughout this litigation, and my previous notations of those possible contradictions were not meant to be the equivalent of a holding that a party has in fact contradicted itself. In my statements quoted by plaintiffs to support their argument of inconsistency by Microsoft, I made those statements in a footnote and used the words "appear to" deliberately so that such an inference would not be made. Even if Microsoft has contradicted itself to its detriment, which I am not willing to conclude decisively at this point, that alone does

7

not prove willfulness, and plaintiffs have failed to draw that connection. Inconsistency alone is not proof of willfulness, and that is all plaintiffs rely upon.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246-48 (1986). The test for willfulness is "whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that a court might hold the patent invalid or not infringed." *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988). Willfulness is determined from a totality of the circumstances. *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed Cir. 1985). Generally, "[t]o willfully infringe a *patent*, the patent must exist and one must have knowledge of it." *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). It is undisputed that this suit was filed 77 days after the '906 patent issued, which is a relatively short period of time and lends weight to Microsoft's contention that it did not know of the '906 *patent* (as opposed to the '906 patent application) until the original complaint was filed. The question here is whether Microsoft has litigated this case in bad faith, i.e., presented frivolous defenses. Based upon my October 18, 2002, opinion, I think it is clear that I do not find Microsoft's defenses to this suit frivolous. Non-frivolous defenses, "coupled with [] simultaneous receipt of knowledge of the patent and a court summons, precludes a finding of willfulness." *Gustafson, Inc. v. Intersystems Industrial Products, Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990). Plaintiffs argue that this holding is no longer valid in light of subsequent case law, but after reviewing it, I do not agree. For example, plaintiffs argue that *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir 2001) narrows *Gustafson* such that a non-frivolous defense cannot

dispose of a willfulness allegation. I read this case to clarify that non-frivolous defenses are not automatically dispositive of a willfulness claim, not to preclude the possibility that non-frivolous defenses *could* be dispositive. *Id.* at 1351-52.

What plaintiffs have attempted to argue in its opposition to Microsoft's motion is that Microsoft copied the '906 technology during the time before the patent issued and now continues its infringing activity. This appears to be a disguised re-argumentation of the pre-suit willfulness that I have already dismissed from this case. Hence, even if I were to ignore the evidence completely and simply accept plaintiffs' allegations as completely true, plaintiffs' willfulness claim would not be saved. These allegations speak to pre-suit conduct, which I have very clearly and specifically taken out of the case. Plaintiffs have not presented any evidence, nor have they specifically alleged that Microsoft's defense of this case is frivolous. To accept plaintiffs' assertions that Microsoft committed pre-suit willful infringement and infer from those allegations that Microsoft has litigated this case in bad faith would only bring the issue of pre-suit willfulness back into the case.

For the reasons stated above, Microsoft's motion for partial summary judgment with respect to willfulness is granted. Because I have granted this motion, I need not address the issue of bifurcation.

ENTER:

James B. Zagel
United States District Judge

DATE: 16 April 2003