# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 626 | **DATE** | 7/2/2003 |
| **CASE TITLE** | EOLAS TECHNOLOGIES vs. MICROSOFT CORP. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) .

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (408) in limine is denied as moot. Motion (410) in limine is denied. Motion (413) to compel is denied. Motion (416) in limine is denied. Motion (420) limine is denied. Motions in limine (361-1, 3, 4, 6,7, 8, 9, and 11) are denied. Motions in limine (361-2, 5, and 10) are granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | JUL 7 2003 date docketed | 431 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | *eu* docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |


**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EOLAS TECHNOLOGIES, INC. | |
| and | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | No. 99 C 626 |
| | Judge James B. Zagel |
| Plaintiffs, | |
| v. | |
| MICROSOFT CORPORATION, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have submitted five motions in limine, and Microsoft has submitted eleven.

Below are the rulings for all sixteen motions.

Plaintiffs' Motions in Limine

1.    To Preclude Microsoft from Introducing Exhibits Not Identified on the Trial Exhibit List:

Microsoft, in its response to the motion, agrees that all exhibits, with the exception of

rebuttal and impeachment evidence, must be on the exhibit list.  Because there appears to

be no dispute, the motion is DENIED as moot.

2.    To Order Admissibility of Documents or Testimony of a Witness Regarding Foundation

and Authenticity: plaintiffs request that this court order that any document written by an

employee of a party, and produced from its files is, when offered into evidence by the

481

opposing party, an authentic business record. In the alternative, plaintiffs ask that this court order Microsoft to make available either for a short deposition or at trial during plaintiffs' case-in-chief, a witness who, as custodian of the records, can authenticate and lay foundation for documents produced out of Microsoft's business files.

In its response to the motion, Microsoft indicates that it had previously offered to enter into a stipulation regarding authenticity so long as it would apply to any materials produced by any party or third party during discovery, but plaintiffs oppose the proposal, arguing that such a stipulation would open the doors to unlimited third party discovery, which is unfathomable at this point in the case. Microsoft opposes plaintiffs' motion because (1) there would be an inequitable evidentiary burden on Microsoft because it has produced many more documents than plaintiffs; (2) it is unreasonable to ask Microsoft to forego any objections to the admissibility of virtually every document upon which plaintiffs rely; and (3) it is premature to request witness testimony for authentication and foundation purposes, and doing so would open discovery back up.

Plaintiffs, in this motion, have combined the issues of authenticity with admissibility. This is problematic, for as Microsoft correctly points out, authenticity does not guarantee admissibility. Also, because the business records exception under Fed R. Civ. P. 803(6) is a very narrow exception, such blanket admissibility is not appropriate under the present circumstances. Considering the extremely large number of documents produced in this case (Microsoft estimates that it has produced 300,000 documents that would fall under

plaintiffs' proposed order), I am reluctant to enter an order that determines authenticity and admissibility on such a widespread scale.

At the time this motion was briefed, exhibit lists had not been exchanged by the parties. Now that they have, perhaps the parties can agree to a stipulation regarding the authenticity and/or admissibility of employee evidence. If such an agreement cannot be made, I think that this issue will be better addressed as problems arise during the course of trial. If both parties, having seen each other's exhibit list, believe that there will be a large number of disputes, they may raise the issue before trial begins, and the court will devise an appropriate solution. Plaintiffs' motion is DENIED.

3. <u>To Compel Microsoft to Make Available Its Employees to Plaintiffs During Trial</u>: Microsoft describes plaintiffs' motion as requesting that the court compel Microsoft to "make any witness it may rely on for live testimony during its case, available to testify during Plaintiffs' case-in-chief." Plaintiffs insist that the motion is directed only to Microsoft employees "who Microsoft is already bringing to Illinois to testify." Although it is understandable why Microsoft interpreted the motion as it did, considering plaintiffs' closing paragraph in its Memorandum supporting their motion, I will accept plaintiffs' assertion that the motion is directed solely to those Microsoft employees who will already be brought to Chicago by Microsoft. Therefore, plaintiffs' motion is GRANTED, but only with respect to the limitation noted above.

4.  <u>To Exclude Opinion Evidence of Creighton Hoffman</u>: plaintiffs seek to exclude the

testimony and opinions of Creighton Hoffman, Microsoft's damages expert, with respect to

his allegedly "faulty assumption that a reasonable royalty must be limited to the value of the

patent holder company." Microsoft's counter to this is that Mr. Hoffman relied upon the

factors laid out in *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp.

1116, 1120 (S.D. N.Y. 1970), not a market cap theory. Microsoft argues that although Mr.

Hoffman does take into account plaintiff Eolas Technologies, Inc.'s ("Eolas") market value

in his reasonable royalty analysis, Mr. Hoffman's conclusions were by no means based on

or limited by that market value, and there is nothing in *Fromson v. Western Litho Plate &*

*Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir 1988), stating that any reference to earnings or

market cap is *ipso facto* improper.

I agree with points made by both sides. I agree that the figure produced by a reasonable

royalty analysis should not be limited by the market value of a company. However, after

reviewing *Fromson*, I also agree that while *Fromson* was concerned with a small

company's or individual inventor's poor bargaining position, it does not hold that the

market value of a company must always be absent from the analysis.

The question then becomes, how much of a factor was Eolas' market value and earnings in

Mr. Hoffman's analysis? According to Microsoft, Mr. Hoffman concluded that plaintiffs'

damages expert, James Nawrocki, came up with a proposed royalty that was exorbitantly

high by comparing Mr. Nawrocki's figure with a number of factors, none of which were

Eolas' market value. For example, Microsoft asserts that Mr. Hoffman took into account

how much Microsoft paid for the Mosaic browser and Hotmail, as well as the value of other assets that Microsoft has purchased or could have purchased in lieu of a license. Microsoft also points to Mr. Hoffman's consideration of availability to Microsoft of allegedly acceptable alternatives to the patented device that would decrease the royalty rate. *See Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996). Based on such considerations, it is unclear at this point that Mr. Hoffman's analysis was in fact limited by Eolas' market value.

Therefore, plaintiffs' motion is DENIED. If, at trial, plaintiffs can show that those parts of Mr. Hoffman's testimony and opinions using Eolas' market value as a consideration were truly limited by Eolas' market value, despite all of the other factors used in Mr. Hoffman's analysis, I will give appropriate instruction to the jury.

5.  <u>To Exclude Evidence of Alleged Inequitable Conduct and Prosecution Irregularities at the Jury Trial</u>: plaintiffs ask the court to preclude documents, testimony, and lawyer argument suggesting that Dr. Michael Doyle had an obligation to submit to the Patent and Trademark Office ("PTO") the limited information he had about ViolaWWW during prosecution of U.S. Patent No. 5,838,906 ("the '906 patent") during the jury phase of the trial. Microsoft concedes that the question of inequitable conduct is for the court, not the jury, to decide, but it opposes the motion because it believes some of the evidence plaintiffs seek to preclude are relevant to the issue of prior art and invalidity, which are for the jury to decide.

Clearly, the factual issues surrounding inequitable conduct and prior art and invalidity are intertwined to some degree. While I understand plaintiffs' resulting concern, I feel that this problem is best handled on a case-by-case basis during the course of trial. There will likely be evidence concerning ViolaWWW that is relevant to the issues of prior art and invalidity that does not suggest that Dr. Doyle engaged in any inequitable conduct, and there will likely be evidence relevant to prior art and invalidity, but suggestive enough of inequitable conduct that the potential prejudice to the jury will outweigh its probative value.

I will lay down a few guidelines to aid the parties in making these distinctions, although I reserve the right to modify them as the trial progresses: Microsoft's assertion that ViolaWWW is prior art is clearly admissible. On the other hand, that Dr. Doyle did not mention ViolaWWW to the PTO is not to be told to the jury. As for the admissibility of whether he knew about ViolaWWW prior to the '906 patent application, this will depend on whether he offers an opinion that (1) he considered it as possible prior art around the time that '906 was being processed and regarded the teachings of ViolaWWW as irrelevant to '906, or (2) he testifies that his current opinion is that ViolaWWW is not prior art that casts out his invention. Should he testify only to his current opinion, then his prior encounters are irrelevant.

At this time, I am unwilling to make a sweeping restriction on everything concerning Dr. Doyle and ViolaWWW and will thus consider objections to such evidence as the time arises. Plaintiffs' motion is DENIED.

1.  <u>To Bar Plaintiffs from Referring to Other Patent Litigation Involving Microsoft</u>: Microsoft seeks to bar plaintiffs from referring to other patent litigation, including settlements, in which Microsoft was or is involved. Plaintiffs argue that the motion is over broad and vague and note two examples in which prior litigation involving Microsoft has probative value of issues in this case. Microsoft clarifies in its reply to plaintiffs' response that this motion addresses only patent litigation. While it seems unlikely that the probative value of patent litigation involving Microsoft will outweigh the prejudice to the jury that may result, I am reluctant to shut the door completely at this moment and time and therefore, the motion is DENIED. If plaintiffs decide to present other patent litigation involving Microsoft to the jury, they are instructed to inform Microsoft before they do so. Then Microsoft can raise its objections prior to the introduction of such evidence, and I will determine its admissibility at that time.

2.  <u>To Bar Plaintiffs from Referring to the Reissue Proceedings of the Koppolu Patent</u>: Microsoft asks the court to bar plaintiffs from referring at trial to Microsoft's attempted reissue of U.S. Patent No. 5,801,701 ("the Koppolu patent"), which has claims similar to those of the '906 patent. Although the attempt to reissue the Koppolu patent has failed thus far, it is still pending. Microsoft argues that evidence related to this reissue proceeding is irrelevant, and even if there was some relevance, the evidence would needlessly complicate the trial, and that cost does not justify allowing it. Microsoft states that it will not argue at

trial that the Koppolu patent anticipates the asserted '906 patent claims and thus, evidence pertaining to the Koppolu reissue proceeding is not relevant.

Plaintiffs vehemently oppose the motion, asserting that the Koppolu patent "has been central to this case from the start," to which Microsoft responds, "not any more." Plaintiffs believe that Microsoft will refer to the Koppolu patent as invalidating prior art and as evidence of noninfringement and want to be able to respond to such arguments. In its reply to plaintiffs' response, Microsoft states that it is committed to not relying upon the Koppolu patent at trial as invalidating prior art. Microsoft makes a distinction between the Koppolu patent and *OLE 2.01 Design Specification*, which Microsoft says it will rely upon at trial, stating that the two "are different documents, and they disclose different things." Microsoft also argues that plaintiffs have mischaracterized the Koppolu reissue record, particularly the findings of the PTO.

The Koppolu reissue record is voluminous, and Microsoft's argument that the introduction of the proceedings will complicate the case is compelling—this motion in limine alone is the most voluminous of the 16 motions in limine filed by both parties. I am also sympathetic to plaintiffs' concerns that they will be shut out of responding to an argument made by Microsoft (whether intentional or unintentional) during the course of this trial.

However, essentially what plaintiffs are trying to do is present the opinion of the PTO examiner to the jury, which is questionable. More importantly, what plaintiffs want to do in essence is say that (1) Microsoft originally sought to defend this case using the Koppolu

8

patent; (2) Microsoft was unsuccessful with the PTO; (3) this means that Microsoft was advancing a bad defense; and (4) from this the jury can infer that Microsoft's other defenses are bad. To state it this way is enough to show that Microsoft's motion should be granted. The very purpose of elaborate pretrial proceedings is to allow parties to test their theories, and if their theories fail these tests, they can abandon those theories without suffering an adverse influence.

For these reasons, I am GRANTING Microsoft's motion, but on the condition that Microsoft not introduce the Koppolu patent at any point during this trial, and if plaintiffs feel that it has been brought into the case in any way, they will be permitted to raise the issue as such time arises.

3.  <u>To Bar Plaintiffs from Claiming at Trial That Their Invention Was Made Before the Filing of their Patent Application</u>: Microsoft seeks to prevent plaintiffs from arguing at trial that their invention was made prior to the filing date of its patent application, arguing that plaintiffs cannot overcome the presumption that the invention date is the filing date of the patent application.

To prove an invention date prior to the filing date, certain evidentiary requirements must be met, and there are two steps involved with making an invention: conception and reduction to practice. Microsoft argues that none of the evidence offered by plaintiff is sufficient to meet the evidentiary burden, while plaintiffs argue that at this stage in the case, they have provided adequate evidence to show that they can meet this burden.

9

The documents and testimony involved are quite complex–they incorporate very technical and often detailed descriptions that have been subject to two different interpretations by the parties. Whether certain notes describe the invention or some predecessor that is too unlike the invention will be determined by which of two competing interpretations is a more accurate translation of that text. A motion in limine may be used to preclude a party from making an argument where the evidence proffered to support it is "insufficient as a matter of law." *United States v. Santiago-Godinez*, 12 F.3d 722, 727 (7th Cir. 1993). However, what I have before me is an intensely factual dispute, and while plaintiffs' argument may end up being factually insufficient, I cannot at this point draw that conclusion. Therefore, Microsoft's motion is DENIED.

4.  <u>To Limit Plaintiffs' Infringement Proof at Trial</u>: Microsoft asks that plaintiffs be barred from maintaining at trial that web pages that specify only the COM classid and do not specify the four other attributes (TYPE, CODE, CODETYPE, or DATA) infringe the '906 patent, arguing that there is no possible way a jury could find that such web pages infringe. Plaintiffs contend that this is merely Microsoft's way of improperly seeking reconsideration of my previous summary judgment ruling in an underhanded way. I will give Microsoft the benefit of the doubt, although I do question why Microsoft did not move to exclude from the case this specific type of specific web page at the summary judgment stage.

    Microsoft argues that "[f]or the web pages covered by the present motion, no reasonable juror could find that the browser 'identifies and locates' the executable application."

10

Plaintiffs counter with the statement that "Internet Explorer practices the asserted claims of the '906 Patent without regard to the particular form in which the type information is present in the Web page."

Although I do not believe that Microsoft is attempting to sneak in reconsideration of my prior summary judgment ruling, the arguments set forth by both parties echo the arguments already made with respect to that earlier motion. The parties continue to debate what the browser actually does versus what the operating system actually does, which is an issue central to this trial and far from resolved. Microsoft's arguments are based on the assumption that it is undisputed that when the browser parses a web page of the type at issue here, it simply extracts the COM classid and passes it to the operating system, which then performs the real "work" that is needed to identify and locate the application. Plaintiffs make it clear that this is not an undisputed understanding of what the web browser does in such a case, and although Microsoft argues that plaintiffs are simply wrong in their assertions, this is yet to be proven. In my Claim Construction Order, I held that whether the browser is utilizing type information to identify and locate an application "in any given permutation is a question of fact." In my October 18 opinion, I stated that the CLASSID HTML and binary COM classid are "different translations of the same thing." Microsoft interprets this statement to mean that whatever form the COM classid takes, it is simply passed onto the operating system. However, I stated in my opinion that these differing translations still raise the question of what does the identifying and locating. At this point, I cannot agree with Microsoft that a reasonable juror would definitely not find infringement for the web pages at issue here, and consequently, Microsoft's motion is

DENIED. If, during the course of trial, Microsoft feels that this point has been proven by the evidence, it may request an appropriate instruction to the jury, and the court will consider that request as such time arises.

5. To Exclude "Evidence" and Argument of Copying: Microsoft asserts that plaintiffs should be barred from maintaining at trial that Microsoft tried to copy the invention of the '906 patent. The evidence at issue in this motion, namely (1) a demonstration by Dr. Doyle to Continuum Productions, (2) evidence of a meeting between Dr. Doyle and Thomas Krauskopf of Spyglass Technologies and Mr. Krauskopf's dealings with Microsoft, and (3) Bill Gates' alleged knowledge of and interest in the '906 technology, have all been addressed by this court already in my April 16, 2003, Memorandum Opinion and Order in which I granted Microsoft's Motion for Partial Summary Judgment with Respect to Willfulness. I granted the motion because I found that Microsoft's defenses to this suit were not frivolous, and I also pointed out that pre-suit willfulness had previously been taken out of this case and therefore no longer at issue.

After reading Microsoft's opening brief and plaintiffs' response, it appears that the parties had not yet seen my April 16 opinion at the time these briefs were written. Microsoft incorporates it into its reply and argues that this issue is and has been dead for some time. My inclination is to agree with Microsoft.

Plaintiffs seem to suggest in their response to this motion that the evidence of copying described above is relevant to issues other than willfulness. However, given the highly

12

prejudicial nature of the evidence in light of my prior rulings, I am reluctant to allow this evidence back into the case without a more compelling argument for why its alleged relevance outweighs the possible prejudice to Microsoft that may result. Therefore, I am GRANTING Microsoft's motion, but I will give leave to plaintiffs to raise the issue once more if it should decide to introduce such evidence at trial for issues other than willfulness. Plaintiffs must do so before introducing any such evidence at trial and in the absence of the jury.

6. To Bar Plaintiffs from Seeking Damages on Units of Internet Explorer Made and Sold Outside the United States: Microsoft seeks to bar plaintiffs from seeking damages based on foreign sales of Windows OS products because no U.S. patent, including the one at issue in this case, has extraterritorial effect. Plaintiffs argue that whether the accused products are sold and made within or outside the U.S. is a factual question for the jury and cannot be determined here.

This is not the first time this question has arisen before the court. In my October 18, 2002, Memorandum Opinion and Order, I addressed Microsoft's request to amend its response to an admission that certain Windows OS products and Internet Explorer, identified by licence numbers, were made in the U.S. At issue then, as it is still now, is what is meant by the word "made." Under 35 U.S.C. § 271(a), anyone who, without authority, makes a patented invention within the U.S. infringes the patent. Plaintiffs argue that they can prove Windows OS products and Internet Explorer are "made" in the U.S. Microsoft argues that the uncontested facts prove that what is done by overseas Original Equipment

13

Manufacturers ("OEMs") constitutes "making" the accused products and therefore, it is not for the jury to decide.

The factual issues concerning what constitutes "making" do not appear to have changed since I allowed Microsoft to amend its admission answer last fall. The process described by Microsoft had not been and still is not contested by plaintiffs. Rather, what plaintiffs continue to contend is that the point at which the "making" of a product begins is a factual dispute yet to be resolved. I do not find that the uncontested facts resolve the problem because it is from the interpretation of those facts that an answer must be found, and the record does not unequivocally show that one interpretation is correct over another. Therefore, Microsoft's motion is DENIED.

7.  To Exclude Portions of Proposed Opinion Testimony of James J. Nawrocki: Microsoft challenges Mr. Nawrocki's expertise and methodology with respect to all *Georgia Pacific* factors except 1, 3, and 7, arguing that his assessment of damages if Microsoft is found to have infringed is based upon expertise not possessed by Mr. Nawrocki, unreliable methods, and is irrelevant. Microsoft's contentions with Mr. Nawrocki's opinions include the following: (1) he failed to consider the possibility of a lump-sum royalty, which affects Factor 2; (2) he did not test his opinions against market realities, which affects Factors 4, 5, 6, and 8; (3) he did not determine the "value" of the patented technology or its effect on sales of Windows, which affects Factors 6 and 13; (4) he failed to account for non-infringing alternatives, which affect Factors 10 and 11. Essentially, Microsoft alleges that

Mr. Nawrocki does not possess adequate knowledge of the technology at issue to make his assessments, and he did not take into account certain market issues.

Plaintiffs contend that Mr. Nawrocki is qualified to make all assessments in his report, and with respect to those matters that he did not know as much about, whether it concerned technical issues or questions about market values, he relied upon the findings and testimony of other experts employed by plaintiffs for that specialized knowledge. For instance, plaintiffs assert that Mr. Nawrocki did not rely upon non-infringing alternatives because he relied upon Dr. Felten's unequivocal opinion that no acceptable non-infringing alternatives existed. Microsoft argues that there is no indication of exactly what Mr. Nawrocki allegedly relied upon, nor is it clear that he interacted with plaintiffs' other experts both in his report and in those other experts' reports.

Mr. Nawrocki's report may have relied upon and incorporated information from plaintiffs' other experts despite the absence of any detailed explanation, and for this reason, I am DENYING Microsoft's motion. The bases of Mr. Nawrocki's conclusions may become clearer and more detailed during his examination at trial, and Microsoft will have the opportunity to demonstrate that certain portions of his testimony are inadmissible during cross-examination. At the present, I am not convinced that Mr. Nawrocki's conclusions which Microsoft opposes are entirely baseless or improperly developed—the alleged deficiencies in his report are not enough to establish this.

8. **To Exclude Testimony and Damage Calculations Referring to or Relying on Microsoft or Windows Revenues or Profitability**: Microsoft argues that plaintiffs' patent claims cover Internet Explorer only, not the Windows OS products, and including revenue numbers associated with Windows OS products is irrelevant and prejudicial to Microsoft. Plaintiffs argue that all Windows OS products are accused and therefore, that revenue information is relevant and appropriate to include when determining the base for the award of royalties.

Under *Fonar v. Gen. Elec. Co.*, 107 F.3d 1543, 1552 (Fed. Cir. 1992), when damages are sought for a patented functionality which constitutes a single feature of a multi-featured product, the patentee is not entitled to a royalty on revenues from the entire product unless it can show that "the patented feature is the basis for customer demand of the entire [product]." Plaintiffs assert that they will produce evidence at trial showing that Microsoft's incorporation of the '906 functionality was the reason why Windows OS products were successful. Microsoft argues plaintiffs clearly cannot prove this.

Whether plaintiffs can show that the '906 technology is the reason for the success of Windows OS products is a factual issue to be determined by the jury, not the court. Therefore, I am DENYING Microsoft's motion. Microsoft's concerns that the jury might produce an erroneously high royalty award will be addressed in the jury instructions and verdict forms, both of which will make clear that if the jury finds that the '906 technology was not the reason for consumer demand of Windows OS products, they cannot consider Microsoft's revenues for Windows OS products in determining a reasonably royalty–they must consider the revenues attributable to Internet Explorer only.

9.     <u>To Exclude the Opinion Testimony of Robert J. Dolan</u>: Microsoft asks the court to exclude the testimony of Robert J. Dolan because it offers two broad opinions that are based upon unreliable methodology. Those two opinions concern the supposed importance to Microsoft of incorporating the allegedly infringing technology into Internet Explorer and the connection between the commercial success of Internet Explorer to the accused feature. Microsoft does not appear to contest the qualifications of Mr. Dolan; rather, it questions Mr. Dolan's methodology. Plaintiffs argue that Microsoft's problem is not with Mr. Dolan's methodology but rather, with his conclusions.

The methodology at issue is the Harvard case study method, which Mr. Dolan used in developing case studies while he was a faculty member at the Harvard Business School. Microsoft argues that because the case studies produced by this method always contain the caveat that they should "not be relied upon as a source of empirical data," this methodology is clearly an unreliable means of drawing the conclusions set forth in Mr. Dolan's report. Microsoft also asserts that Mr. Dolan (1) did not consider documents from the appropriate time period; (2) had a mistaken understanding of the '906 patent; and (3) he did not factor into his analysis alternatives to the '906 technology. While the alleged fallacies pointed out by Microsoft may in fact turn out to be true, these questions raised by Microsoft should be addressed in the cross-examination of Mr. Dolan. Also, I do not find the methodology used by Mr. Dolan to be patently unreliable, and there is no case law clearly stating that this methodology is in fact improper in a case such as this. Perhaps there are significant limitations to the value of Mr. Dolan's testimony due to the fact that his methodology is a teaching tool not intended to produce empirical evidence, but excluding his testimony

altogether is not appropriate at this stage in the case. For these reasons, Microsoft's motion is DENIED.

10. <u>To Exclude Robert L. Harmon's Testimony That (A) Involves Legal Opinion or Ultimate Legal Issues or (B) Requires Expertise Mr. Harmon Does Not Possess</u>: Microsoft seeks to prevent Robert L. Harmon, an expert witness for plaintiffs, from testifying about interpretations of the law, merits of the case, and Dr. Doyle's alleged intent to deceive the PTO, arguing that such testimony is improper. Plaintiffs argue that Mr. Harmon is qualified to testify about matters contained within his report, and with respect to Dr. Doyle, his testimony would respond to arguments made by Microsoft's expert that Dr. Doyle did intend to deceive the PTO.

Mr. Harmon is certainly qualified to testify about patent applications, the prosecution of the '906 patent, PTO procedures, and reexamination, and such testimony will be helpful to the jury. However, the testimony cited by Microsoft is improper. It is improper for Mr. Harmon to testify about, for example, what he believes the legal standard for willful infringement is. It is also improper for Mr. Harmon to testify that based on the record before him, "a reasonable jury could find that Microsoft did not obtain a competent opinion of counsel that would have provided it with a reasonable belief that the '906 patent would be held invalid, unenforceable, or not infringed." Such assessments of the law are the province of this court. With respect to Dr. Doyle, it is true that Microsoft's expert, Larry S. Nixon, concludes in his expert report that based on the evidence before him, it is his

opinion that Dr. Doyle either intended to deceive the PTO or chose to ignore material information. Mr. Nixon is careful to make it clear that this conclusion is his opinion based on the evidence before him and that the issue is far from decided at this point. In contrast, Mr. Harmon's conclusion that Mr. Doyle did not intend to deceive or mislead the PTO ends with the statement "there is no evidence of knowledge, nor of intent to mislead." There is a difference between stating that at the present time the evidence tends to show or not show something and stating that the evidence does in fact prove something, and the latter is improper testimony. Mr. Harmon was not present during Dr. Doyle's appearance before the PTO and therefore has no firsthand knowledge of whether Dr. Doyle possessed any intent to deceive or mislead. Thus, his opinion can only be based on the limited evidence before him, and that opinion must be qualified to indicate that the opinion has limited value. Mr. Harmon's statements regarding Dr. Doyle's intent appear to state that although Mr. Harmon was not present when Dr. Doyle testified before the PTO, the evidence is so unequivocal that the absence of an intent to deceive or mislead clearly never existed. This is improper testimony.

Hence, I am GRANTING Microsoft's motion with respect to any testimony regarding interpretations of law, legal conclusions, assessments or predictions of what a jury would conclude, and conclusions regarding Dr. Doyle's intent to deceive or mislead the PTO that are not clearly indicated to be Mr. Harmon's opinion based on the evidence before him.

11. <u>To Set the Order of Proof and Order of Closing Arguments at Trial</u>: Microsoft asks that the order of proofs and closing arguments at trial be organized as such: plaintiffs present

evidence on infringement and damages, then Microsoft responds, after which Microsoft presents its case on validity, then plaintiffs present rebuttal on infringement and damages, and finally, Microsoft presents rebuttal on validity. Microsoft feels that because it is the party bearing the burden of proof on invalidity, it should be allowed to go first. Plaintiffs argue that this structure will only complicate the case and cause undue burden on witnesses.

While I am sympathetic to Microsoft's concern, structuring the case in the way Microsoft proposes will likely complicate an already complex case, for there are factual issues concerning infringement and validity that overlap. Therefore, the motion is DENIED.

However, to address the possible inequity that Microsoft might face, I will allow the following: Microsoft may request an opportunity for the last word on validity after plaintiffs have presented its rebuttal. The court will take into consideration whether the rebuttal evidence is duplicative or raised for the first time in rebuttal, and if it is found to be the latter, Microsoft will then be allowed a final response.

ENTER:

James B. Zagel
United States District Judge

DATE: 2 July 2003