# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 626 | **DATE** | 7/31/2003 |
| **CASE TITLE** | EOLAS, ET AL vs. MICROSOFT CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order denying defendant's oral motion to bar damages on units of Windows with Internet Explorer produced and sold outside the United States.**
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 04 2003 | |
| ✓ | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 03 AUG -1 PM 2:05 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

EOLAS TECHNOLOGIES, INC. and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

Plaintiffs,

v.

MICROSOFT CORPORATION,

Defendant.

No. 99 C 0626
Judge James B. Zagel

DOCKETED
AUG 4 2003

## MEMORANDUM OPINION AND ORDER

In this patent infringement case, Microsoft moves to bar plaintiffs from seeking damages on units of Windows with Internet Explorer produced and sold outside the United States if plaintiffs prevail on the merits.

The question of whether the accused product is "made" here has been long debated in this case. There is no clear governing precedent. I examine existing law to discern what constitutes "made" in the present context.

The two provisions of 35 U.S.C. § 271 that are applicable to this question are Sections 271(a) and (f). Under Section 271(a), there is a requirement that there be an "operable assembly" of the infringing products here before there can be liability. *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972). In *Deepsouth Packing*, the Court interpreted the word "makes" as used in Section 271(a) as referring to an "operable assembly," meaning that exports of unassembled component parts do not infringe a combination patent claiming the assembled whole. *Id.* at 527-29. Microsoft is right when it says that to be liable under Section 271(a), all of the parts that must be put together in order for Internet Explorer to become an "operable

assembly" includes its installation onto the hard drive of a computer. This takes place outside of the United States. There is no liability under Section 271(a).

Section 271(f) prohibits manufacturing all or a substantial part of the significant components of a patented invention here and then having those components assembled abroad. This law was Congress's disapproval of the ruling of *Deepsouth Packing*.

The intellectual property at issue in this case, namely the Windows source code, is contained on a computer disk, known as the "golden master." Microsoft provides this disk to foreign Original Equipment Manufacturers ("OEMs") pursuant to intellectual property licensing agreements for their use in making and selling abroad computer products containing Windows. According to Microsoft, new units of Windows code are created abroad when the foreign OEMs, for each unit, replicate the Windows code in its manufacturing facility using the single "golden master" and installs these new units of replicated code on a computer useable medium, such as a computer disk or hard drive, which is supplied by the foreign OEM. Microsoft argues that this "golden master" is not a component of the foreign sales products within the meaning of Section 271(f).

The closest cases are *W.R. Grace & Co. v. Intercat, Inc.*, 60 F. Supp.2d 316, 319-21 (D. Del. 1999) and *Lubrizol Corp. v. Exxon Corp.*, 696 F. Supp. 302, 325 (N.D. Ohio 1988). In these cases the defendants sent chemical products abroad that were combined as supplied with other compounds into compositions that would have infringed had the combination occurred here. Those judges found that there was liability under Section 271(f). Only one of these opinions offered a rationale but both relied on what they, and I, agree is the plain language of the statute.

Microsoft argues that the "golden master" is distinguishable from the chemical products in these cases. It asserts that the disk is analogous to the formula for those chemicals sent abroad, not the chemicals themselves and therefore, the disk is not a component of the allegedly infringing product.

The "golden master" is like a chemical formula in that it is a series of directions (commands) written down so that it can be used again and again. If followed, the formula produces a result which is desired by its user or purchaser.

The "golden master" is unlike a chemical formula because its contents are an operating element of the process which produces the result which is desired by a user or purchaser (like Paranox 300 and Paranox 600 when added to other ingredients made a better oil additive in *Lubrizol*).

A chemical formula can be memorized (as many complex recipes are) and discarded. The source code has to be installed, never to be discarded.

A philosophical argument can be made that installation of the source code is akin to memorizing it. But I think the recipe memory, of which we speak (in ordinary language) is not what we mean when we speak of computer memory.

The machine does not "remember'--it holds code and, unlike the human, that is all it does. The result desired by the user of the compound product of the programmable machine (a computer) and Windows code is made from code and hardware together. That which invokes the operation to secure a result (i.e., my finger pushing buttons) and the devices connected to the buttons are, in the important sense here, external to the basic product. So too are the devices which input data. That which displays the machine's output is external in this way.

The devices which start the machine, input data, or display output are essential to the usefulness of the machine to users. Yet if the laptop on which I am writing this opinion had a power button stuck in the on position, a keyboard covered by a solid locked plate, and the screen was dead, but "my laptop" is still there. What is there is the internal hardware and the source code which operates, provides utilities, can browse and execute applications.

This analysis is not metaphysical. It is an analysis of language. It is appropriate because the goal is to find the meaning of ordinary language as it is used by lawyers and judges when deciding whether something is made and, if so, where it is made. Where code is installed on a disk or a hard drive to be put into a programmable machine, I conclude that source code in a computer product like my laptop is, in law, the legal equivalent of a piece of computer hardware and not the legal equivalent of a chemical formula.

In a legal sense, a source code is a made part of a computer product. In contrast, a chemical formula is discovered rather than made, and is not part of any product.[1]

I will not bar plaintiffs from seeking damages for units of Windows with Internet Explorer which are produced and sold outside this country.

ENTER:

James B. Zagel
United States District Judge

DATE: 31 July 2003

---

[1] A philosopher would find it difficult to draw the line between "making" and "discovering" a thing but judges are obliged to draw such lines. The judges' job is made a little (but not much) easier because we render our decision based on the way in which a thing is used.

4