**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EOLAS TECHNOLOGIES INC., a Delaware corp., and REGENTS OF THE UNIVERSITY OF CALIFORNIA, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 99 C 626 |
| v. | ) ) | |
| MICROSOFT CORP., a Washington corp., | ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## ORDER

This patent case, commenced in 1999 and before this court on remand from the Federal Circuit, is currently set for trial on July 9, 2007. The parties have filed numerous motions in limine, Plaintiffs have moved for summary judgment on the issue of inequitable conduct, and Defendant Microsoft has promised that a motion for summary judgment on obviousness is imminent. Microsoft has also filed a motion to continue the trial, based on the fact that the Patent and Trademark Office ("PTO") on May 24, 2007 declared an interference between the patent-in-suit (the '906 patent) and Microsoft's own "Koppolu" patent. In seeking a continuance, Microsoft contends that in light of the pending PTO interference proceedings, which, according to Microsoft, will involve the same issues likely to arise at trial, a delay is appropriate because a trial would be duplicative of the interference proceedings, an inefficient use of judicial resources, and prejudicial to Microsoft. In this Order, the court addresses only the issue of whether the interference provides sufficient reason to grant a continuance, and does not address any other reasons for possibly delaying the trial. For the following reasons, Microsoft's motion for a continuance due to the pending interference is denied.

## BACKGROUND

### A. Koppolu in the PTO Interference Proceedings

Early in this litigation, Microsoft attempted to provoke an interference[1] between the '906 patent and its own Koppolu patent.[2] The initial Koppolu patent application was filed on April 14, 1994, and the '906 patent on October 17, 1994. In November 1999, Microsoft sought the interference by filing an application for re-issue of Koppolu that copied most of claims 1 and 6 of the '906 patent. (Request for Interference, Ex. 24 to Pl.'s Tutorial Materials.)

Koppolu disclosed and claimed certain aspects of Object Linking and Embedding ("OLE") technology. According to the description provided by Microsoft in the 1999 request for interference, OLE allows a computer user to create "compound documents," which are documents that contain embedded or linked "objects." (*Id.* at 2.) An example would be an Excel spreadsheet embedded within a Word document: the user can interact with (edit) the spreadsheet within the Word window, without switching over to Excel; or the Word document may contain a "link" to the Excel spreadsheet, such that whenever that spreadsheet was edited, the user of the Word document would be able to access the updated data within the Word window. (*Id.*)

The '906 invention, in general terms, allows the user of a web browser, when visiting a web page, to interact with a data object, such as a 3-D image that requires the launch of a separate

---

[1] An interference may be declared "[w]henever an application is made for a patent which, in the opinion of the [PTO], would interfere with any pending application, or with any unexpired patent[.]" 35 U.S.C. § 135. The Manual of Patent Examining Procedure ("MPEP") explains that an interference is a "contest . . . between an application and either another application or a patent," that is declared to assist the PTO in determining priority, "that is, which party first invented the commonly claimed invention." MPEP § 2301. The PTO can declare an interference between an issued patent and an application for re-issue of a separate patent. *See* 37 C.F.R. 41.202(a). A re-issue applicant can thus attempt to provoke the interference by adding a claim to a re-issue application, and showing both that the claim interferes with the claim of another patent and that the added claim is supported by the applicant's original written specification. *Id.*

[2] U.S. Patent No. 5,801,701, issued to Srinivasa R. Koppolu *et al.*, is entitled "Method and system for in-place interaction with contained objects." Microsoft is the assignee.

"helper" application in order to allow interactivity, without navigating away from the browser and manually launching the helper application; instead, the application launches automatically and the user can interact with the data object, e.g., the 3-D image, within the browser window itself.

In its request for interference, Microsoft contended that the claims of the '906 patent are directed towards the OLE technology disclosed by Koppolu, if that OLE technology were applied over networks including the World Wide Web, and are thus patentable to Microsoft. (Request for Interference, at 3-4.) To successfully provoke an interference, Microsoft had to demonstrate that the copied '906 claims found adequate support in the Koppolu specification. *See* 37 C.F.R. 41.202(a). To attempt to overcome the fact that the Koppolu specification lacked key terms of the copied '906 claims, such as "network," "distributed hypermedia environment," (i.e., the World Wide Web), and "browser application," Microsoft contended that those terms were either inherent in the Koppolu specification, or contained in external documents, such as "The Windows Interface: An Application Design Guide," the entirety of which Microsoft asserted were incorporated by reference to specific parts of those materials in the Koppolu specification. (*Id.* at 9-27.)

In September 2001, the PTO Examiner rejected Microsoft's request for interference, concluding that the copied '906 claims lacked adequate support in the Koppolu specification. (Detailed Action, Ex. D to Def.'s Mot.) The Examiner found that Koppolu contemplated a single workstation environment, and that the '906 claims, which spoke of networks, browsers, distributed hypermedia environments, and the like, thus introduced subject matter outside the scope of the Koppolu specification. (*Id.* at 4-5.) The Examiner further rejected Microsoft's argument that the external materials were incorporated in their entirety. (*Id.* at 6-8.) In September 2006, the Board of Patent Appeals and Interferences (the "BPAI") affirmed the Examiner's decision. (Decision on Appeal, Ex. 24 to Pl's Tutorial Materials.)

Microsoft requested a rehearing. On May 24, 2007, a five-judge panel of the BPAI unanimously vacated the September 2006 decision and found the Examiner's reasons for rejecting

3

the request for interference to be in error. (New Decision on Appeal (the "BPAI Decision"), Ex. E to Def.'s Mot., at 1, 37.) The BPAI did not reach Microsoft's incorporation-by-reference argument, instead concluding that the "network" limitation in the '906 claims had inherent written description support in the Koppolu specification, even without reference to any external material. (*Id.* at 25.) Specifically, the panel found that although in discussing the steps of OLE embedding and linking, the Koppolu specification described those steps as performed on a single computer, Koppolu did not say whether that computer was a standalone computer or a computer on a network, or whether the linked files could reside elsewhere on a network. (*Id.* at 21-22.) Moreover, a person having ordinary skill in the art relevant to OLE technology would have been aware of the networking capabilities of both OLE and Windows 3.1 (the operating system in use at the time). (*Id.* at 24.) The panel thus concluded that the Koppolu inventors did not view their invention as restricted to standalone computers, rejected the Examiner's conclusion in this regard, and held that the Koppolu specification indeed supported the "network" limitation in the copied '906 claims. (*Id.* at 22, 25.)

In addition, the panel found support in Koppolu for several other key limitations in the '906 claims. First, the Examiner had concluded that "hypermedia environment" lacked support in Koppolu, relying on the fact that Koppolu contemplated only a standalone computer. Because, as noted, the panel had concluded that Koppolu's inventors did not limit their invention to standalone computers, the panel reversed that finding. (*Id.* at 28.) The BPAI further disagreed with the Examiner's conclusion that "browser application" necessarily referred to a web browser; examining a technical dictionary from 1994, the panel instead concluded that the term encompassed any application capable of the functions cited in the definition of the verb "browse," which definition included the mere scanning lists of files and made no reference to web browsing. (*Id.* at 30.) Under this definition, Word performed browsing functions and could thus be understood to be a "browser application." (*Id.*) The panel also found support in the Koppolu specification for the '906 terms "embed text format" and "type information." (*Id.* at 31-33.)

4

Having reversed the Examiner's decision, the BPAI on May 24, 2007 issued a declaration of interference between the Koppolu re-issue application and the '906 patent. (Declaration, Ex. B to Def.'s Mot.) Because the original Koppolu filing pre-dated the '906 filing by six months, the BPAI designated Microsoft as the "senior party" and the '906 inventors as the "junior party."[3] (*Id.*) The BPAI established two "counts," defining the subject matter of the interference. Count I consists of claim 1 of the '906 patent and claims 40 and 50 of the Koppolu re-issue application, (*id.* at 9-12), and Count 2 corresponds to claim 6 of the '906 patent and claim 45 in Koppolu. (*Id.* at 13-15.)

Although both parties refer to Microsoft's having "copied" the '906 claims into the Koppolu re-issue application, this statement is not entirely accurate, as the language in the Koppolu application is not identical. Instead, as Plaintiffs point out, the Koppolu claims appear to omit several key terms. For instance, Claims 1 and 6 of the '906 patent state that an external data object "has type information associated with it *utilized by said browser* to identify and locate an executable application[.]" (*Id.* at 9 (emphasis added).) In claims 40, 45, and 50 of the Koppolu re-issue application, however, the object merely "has type information associated with it to identify and locate an executable application." (*Id.* at 10, 11, 14.) Similarly, where claim 1 of the '906 patent refers to a "computer *network* environment," claim 50 of the Koppolu application refers to a "computer environment"; that environment is a "*distributed* hypermedia environment" in claim 1, but simply a "hypermedia environment" in claim 50; and claim 50 refers to a "hypermedia document" rather than a "*distributed* hypermedia document." (*Id.* at 9, 11 (emphasis added).) As discussed below, Plaintiffs contend that these omissions demonstrate that the Koppolu and '906 claims "are different in dramatic, material respects" and that these differences will ultimately result in the BPAI's ruling in their favor. (Pl.'s Supp. Resp., at 4.)

According to the BPAI Decision, the owners of the '906 patent, i.e., Plaintiffs here, "filed

---

[3] The court addresses the significance of these designations *infra.*

three protests during the examination of [Microsoft's] re-issue application [for the Koppolu patent]." (BPAI Decision, at 3.) Microsoft points to this language in remarking that Plaintiffs "were not passive observers during this process," and further asserts, citing nothing, that "[t]he BPAI considered, and rejected, the arguments made by Plaintiffs." (Def.'s Mot., at 5.) This assertion is unsupported. The BPAI Decision does not indicate when Plaintiffs filed their protests, nor the arguments Plaintiffs raised in those protests; and the opinion contains nothing to suggest the extent to which the BPAI may have considered Plaintiff's arguments. Indeed, up to this point, the Koppolu interference proceedings were entirely *ex parte*; Plaintiffs had no opportunity to be heard beyond the filing of a protest. *See* 37 C.F.R. § 1.291(d) ("The limited involvement of the member of the public filing a protest . . . ends with the filing of the protest.")

In contrast, the next step in the process is an *inter partes*, adversarial interference proceeding between Plaintiffs and Microsoft. The initial phase of the proceeding is a "motions phase," the first step of which is the parties' exchange of a list of proposed motions. (Declaration, at 3.) *See* 37 C.F.R §§ 41.120 & 41.121. These motions may address, *inter alia*, whether a claim is unpatentable in light of prior art, or whether an inventor engaged in inequitable conduct before the PTO. (Declaration, at 3-4; Standing Order ¶ 208.7, Ex. G to Def.'s Motion.) A sample schedule, provided in the PTO's Standing Order regarding interference procedure, indicates that briefing on substantive motions is typically completed in 21 weeks, and that briefing on motions to exclude evidence is completed in 32 weeks. (Appx. of Forms, Standing Order, at 69; Standing Order ¶¶ 155.2, 155.2.1, 155.2.2, 155.3.) The Declaration states that a "typical motions phase last[s] about eight (8) months." (Declaration, at 5.) Following the motions phase and oral argument, (Appx. of Forms, at 69), is a "priority phase" in which the BPAI decides which of the inventors has priority to the claims at issue.[4] BPAI regulations state that "[p]atent interferences shall be

---

[4] As discussed below, the designations of "senior party" and "junior party" come into play in the priority phase, as the senior party, due to its earlier filing date, is entitled to a rebuttable

administered such that pendency before the Board is normally no more than two years." 37 C.F.R. § 41.200(c). Following the BPAI's decision, a dissatisfied party can appeal the outcome by bringing an action in federal district court. *See* 35 U.S.C. § 146.

Here, the Declaration set June 29, 2007 as the deadline for filing motions lists, (Declaration, at 3); that date was subsequently reset to July 16, 2007. (Post Second Conference Call Order dated June 20, 2007, at 4.) According to the schedule set forth in the BPAI's order of June 20, 2007, briefing on substantive motions is to be completed by January 7, 2008. (*Id.* at 7.) Briefing on motions to exclude must be completed by March 21, 2008, with the deadline for filing exhibits set for March 28, 2008. (*Id.*) The order explains that the latter two deadlines "are the equivalent of a trial date in district court and changing those dates is as difficult at the Board as it is in most district courts." (*Id.* at 4.) The date for oral argument is "to be determined." (*Id.*)

Microsoft anticipates filing a motion contending that the '906 claims are unpatentable in light of prior art, and another motion in which it will assert that the '906 inventors engaged in inequitable conduct. According to Microsoft, the BPAI will have "decided" these issues "within about eight months, which would be early 2008." (Def.'s Mot., at 7.) The court is less certain. Although the BPAI Declaration does indicate that the motions phase lasts about eight months, none of the materials the parties have submitted reveals whether the BPAI actually rules on or resolves the issues presented by these motions within this time frame; indeed, briefing on motions to exclude typically is not even complete until 32 weeks, or eight months, have passed. According to *Furukawa Electric v. Corning, Inc.*, 78 U.S.P.Q.2d 1070, 1072 n.2 (Bd. Pat. App. & Inter. 2005), cited by Microsoft, "[a] principal goal of the preliminary motions phase is to establish the correct count, to establish the parties' constructive reduction to practice dates and to determine the subject matter at stake in the interference." It appears unlikely, from this description, that the BPAI would

---

presumption that it was the first to invent. *See* 37 C.F.R. §§ 41.201 & 41.207(a)(1).

be able to resolve all substantive issues, such as inequitable conduct and unpatentability in light of prior art, within eight months.

**B.      Koppolu in This Litigation**

Although the declaration of an interference is a new development, the court notes that this is not the first time that the Koppolu patent has been an issue in this litigation. In determining the claim construction that was affirmed by the Federal Circuit and which remains the claim construction in the proceedings before this court, *see* Order of April 12, 2007, Judge Zagel considered the prosecution history of the '906 patent. *See Eolas Techs., Inc. v. Microsoft Corp.*, No. 99 C 0626, 2000 WL 1898853 (N.D. Ill. Dec. 29, 2000). That history included the '906 inventors' attempts to distinguish their invention from prior art, including Koppolu. *Id.* at *11-13, 16, 18. Judge Zagel noted that the PTO rejected the '906 application three times before issuing the patent, and that the reason for the third rejection was that it would have been obvious to combine the method outlined in Koppolu with web technologies. *Id.* at *11. In response to the PTO, the inventors argued that the OLE technology in Koppolu was different from the '906 invention because it "could not do what the '906 invention could do." *Id.* at *13. Specifically, Plaintiffs first argued that Koppolu did not teach the same kind of automatic invocation of an external function: whereas the '906 invention automatically invoked an external "helper" application when the web browser parsed embedded text, Koppolu required the user to manually activate external applications with a mouse click. (Paper #19, Ex. B to Pl.'s Resp., at 3.) Second, the '906 inventors maintained that Koppolu and the '906 invention sought to accomplish entirely different kinds of interactivity. (*Id.* at 3-4.) In making these arguments, the inventors also differentiated Koppolu on the basis that the OLE technology utilized aspects of a computer's operating system to accomplish the linking and embedding functions, whereas in the '906 invention, the web browser itself performed the relevant steps of identifying, locating and launching helper applications. (*Id.* at 9.) *See Eolas Techs.,* 2000 WL 1898853, at *17-18. After considering these arguments, the Examiner in March 1998 found the

8

'906 claims allowable over prior art, including Koppolu. (Notice of Allowability, Ex. A to Pl.'s Resp.)

Microsoft argued to Judge Zagel that the '906 inventors limited the scope of certain claim terms by making these arguments to the Examiner. Judge Zagel disagreed, *see Eolas Techs.,* 2000 WL 1898853, at *13, 16, 18, and the Federal Circuit affirmed that conclusion, *see Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1337-38 (Fed. Cir. 2005). In noting the differences between the Koppolu and '906 patents for claim construction purposes, Judge Zagel found particularly significant Koppolu's reliance on the operating system to perform the steps of the invention. *See Eolas Techs.,* 2000 WL 1898853, at *18. Microsoft itself made this distinction when it appealed claim construction to the Federal Circuit, noting that when the OLE technology uses "type information" to identify and locate an executable application, this "type information" resides in the registry of the Windows operating system; thus, Microsoft explained, the "*operating system* uses the 'type information (the CLASS_ID) to make the ultimate determination of which application to launch." (Appellate Brief, Ex. B to Pl.'s Supp. Resp., at 56 (emphasis in original).)

**C.      Microsoft's Motion for a Continuance**

In light of the BPAI's declaration of an interference between Koppolu and the '906 patent, Microsoft asks the court to vacate the trial date in this litigation, currently set for July 16, 2007, and to continue the trial to some later date. The court is uncertain of the length of the continuance Microsoft is seeking: in its initial motion, Microsoft asks for a continuance until the completion of the motions phase of the interference proceeding, (Def.'s Mot., at 11); in its reply briefs, Microsoft asserts that it is "merely requesting a brief continuance" and seeks a status conference in September 2007 to "review the status of the interference", (Def.'s Supp. Reply, at 8; Def.'s Reply, at 3); and in a recent (June 19, 2007) filing, Microsoft suggests a continuance "for at least 90 to 120 days to accommodate the initial phase of the interference proceedings." (Def.'s Request for Status Hearing (770), at 2.) Plaintiffs oppose any continuance.

**DISCUSSION**

A decision to grant or deny a continuance "falls within the sound discretion of the trial court." *Daniel J. Hartwig Assocs., Inc. v. Kanner* 913 F.2d 1213, 1222 (7th Cir. 1990) (citations omitted). The denial or grant of a stay is similarly discretionary and is based on the court's inherent power to control its docket. *See Walker v. Monsanto Co. Pension Plan*, 472 F. Supp. 2d 1053, 1054 (S.D. Ill. 2006) (citations omitted); *see also Landis v. N. Am. Corp.*, 299 U.S. 248, 254 (1936)). In deciding whether to grant a stay, the court considers both the interest of judicial economy and the potential prejudice or hardship to the parties. *See Bd. of Trs. of the Teachers' Ret. Sys. of the State of Ill. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 905-06 (N.D. Ill. 2002).

Microsoft contends that going forward with a trial, while the BPAI is conducting interference proceedings, would be duplicative, wasteful of judicial resources, and prejudicial to Microsoft. Specifically, Microsoft asserts that the BPAI in the motions phase will consider the same issues Microsoft expects to raise at trial, including whether the '906 claims are patentable in light of prior art and whether the '906 inventors engaged in inequitable conduct. (Def.'s Mot., at 6.) If the BPAI rules unfavorably to Plaintiffs on these issues, this litigation therefore "can be disposed of in its entirety." (*Id.* at 10.) Moreover, Microsoft predicts that it will likely prevail in the interference, because even if the '906 patent survives the motions phase, Plaintiffs will then have to overcome, in the priority phase, a presumption that Microsoft, as the senior party, has priority and is entitled to ownership of the '906 claims. (*Id.* at 7.) Microsoft also contends that it will be harmed by simultaneous proceedings because the same attorneys, experts, and witnesses will have to participate in both, and that Plaintiffs would suffer little prejudice from a delay because with respect to a remedy, "this case is only about past damages" and involves no ongoing harm. (*Id.* at 8, 11.)

Plaintiffs note that the PTO, Judge Zagel, and the Federal Circuit have all previously considered the '906 patent in light of Koppolu and found significant differences between the two inventions. In light of these differences, Plaintiffs predict that Microsoft's chances of prevailing in the BPAI interference proceeding are "quite remote." (Pl.'s Resp., at 3, 7.) Plaintiffs downplay the

significance of Microsoft's status as a "senior party," contending that such a designation amounts to a mere rebuttable presumption, based on filing dates alone, that can easily be overcome. (Pl.'s Supp. Resp., at 6-7.) In any event, Plaintiffs maintain, the interference proceeding will be lengthy—at least two years, according to Microsoft's own citation to BPAI regulations—and will likely be followed by the losing party's appeal to federal district court. (Pl.'s Resp., at 6.) Thus, "it is absurd to believe that the PTO proceedings will have progressed sufficiently to allow [this] trial to proceed in early 2008." (*Id.* at 5-6.) Plaintiffs also maintain that there is no guarantee that the BPAI—or a federal district court upon review—will even reach the issues that would be raised at trial in this court, because there are "several threshold issues," such as whether Microsoft's re-issue application is time-barred or whether the copied '906 claims are indeed supported by the Koppolu specification, that "could well result in a dismissal of this interference." (Pl.'s Supp. Resp., at 9-10.) Finally, Plaintiffs contend that the equities favor the trial proceeding as scheduled, given that this litigation has been pending for eight years and has already featured a jury verdict, two appeals to the Federal Circuit, and an appellate mandate for issues to be tried on remand. (*Id.* at 10-11.)

Both sides cite district court opinions in support of their positions. Microsoft relies primarily on *Wireless Spectrum Technologies, Inc. v. Motorola Corp.*, No. 00 C 0905, 2001 WL 32852 (N.D. Ill. Jan. 12, 2001) and *Bayer AG v. Novartis Crop Protection, Inc.*, 55 U.S.P.Q.2d 1509, 2000 WL 1124513 (M.D. La. 2000). In *Wireless Spectrum Technologies,* the plaintiff sued Motorola for infringement; six months after the suit was filed, the PTO declared an interference between the patent-in-suit and a pending Motorola patent application. 2001 WL 32852, at *1. Motorola then sought a stay of the litigation pending the outcome of the interference, which the plaintiffs opposed out of concern that their patent would expire in the meantime. *Id.* at *1-2. The court granted Motorola's motion, reasoning that:

> The Interference involves the validity of the [plaintiff's patent], the same issue currently before this Court. If the PTO with its unique expertise determines that all or some of the [patent's] claims are invalid, that determination will either dispose of

11

> this case entirely or at least aid the Court in adjudicating this case. Under these circumstances, there is no need for either party to spend time and money litigating both here and in front of the PTO at the same time.

*Id.* at *2 (citations omitted). The court also found that the plaintiff had failed to show that the interference would in fact outlast the patent, or that money damages would be an inadequate remedy even if that occurred. *Id.*

Similarly, in *Bayer*, Bayer sued Novartis for infringement of a Bayer patent. The dispositive issue in the suit was whether Bayer's written specification supported its patent; if not, the patent was invalid and Novartis was not liable for infringement. 2000 WL 1124513, at *1. Two years after the suit was filed, the PTO declared an interference between Bayer's patent and a Novartis application that claimed the same subject matter. *Id.* Novartis moved for a stay, arguing that the PTO would, in the interference, decide the precise issue at stake. The court granted the stay, explaining:

> This Court finds that there is no reason why litigation between the same parties, embracing common issues, should be prosecuted simultaneously. To do so would create an economic hardship on the parties and also result in the ineffective administration of justice. It seems more efficient to allow the administrative study of the patent to conclude before this matter moves toward trial. Additionally, . . . a ruling by the Patent Office, with the expertise possessed in the sorts of issues to be addressed in this case, would be helpful in making a determination of this cause on the merits. Moreover, if the patent held by Bayer is held to be invalid in the Interference proceeding, this case may be disposed of in its entirety.

*Id.* at *3.

Microsoft contends that these two cases are similar because the upcoming BPAI interference will decide the validity of the '906 patent, thus potentially disposing of this litigation in its entirety. (Def.'s Mot., at 10.) In neither case had a lawsuit progressed as far as this one, however. After the action in *Wireless Spectrum Technologies* had been filed in February 2000, the parties in fact had agreed to delay any progress in the action pending Motorola's request for an interference; thus, by the time the PTO issued its declaration of interference in August 2000 and Motorola subsequently moved for a stay, little could have taken place. 2001 WL 32852, at *1. In

12

*Bayer*, the court noted that after the lawsuit had been filed in 1998, it "sat dormant for months," and that "it was only once this Court required the parties to select a trial date in the year 2000 that the parties began to move the proceedings." 2000 WL 1124513, at *3. As Plaintiffs point out, none of Microsoft's cited cases involved circumstances similar to those here, where an interference has been declared after eight years of litigation, a jury has already rendered a verdict of infringement that was upheld on appeal, and the express mandate of the appellate court on remand is a retrial only of the determination of the validity of the '906 patent over one prior art reference and of possible inequitable conduct. *See Am. Tel. & Tel. Co. v. Milgo Elec. Corp.*, 416 F. Supp. 951, 953 (S.D.N.Y. 1976) (staying infringement action where interference had been declared a year *before* the case was filed); *Childers Foods, Inc. v. Rockingham Poultry Mktg. Co-op, Inc.*, 203 F. Supp. 794, 797 (W.D. Va. 1962) (interference declared nine days before suit filed); *Research Corp. v. Radio Corp.*, 181 F. Supp. 709, 710 (D. Del. 1960) (interference declared three years before suit filed).

Plaintiffs cite district court cases in which courts have denied a stay pending resolution of an interference, at least in part because litigation was already substantially underway. In *Chiron Corp. v. Abbott Laboratories*, No. C-93-4380 MHP, 1996 WL 15758 (N.D. Cal. Jan. 3,1996), Chiron sued Abbott for infringement. Two days before the court ruled on cross motions for summary judgment on Abbott's defenses of inequitable conduct and prior invention, the PTO had declared an interference between Chiron's patent and a third party's patent application. *Id.* at *1. Abbott moved for a stay of litigation pending the PTO's resolution of the interference, arguing, like Microsoft here, that "the PTO may find Chiron's patent invalid thereby rendering the case moot," and that "simultaneous and duplicative proceedings are unnecessarily expensive and time-consuming." *Id.* at *3. The court rejected these arguments, explaining that:

> This action has progressed too far for it to be equitable to stay these proceedings—potentially for a number of years—in favor of those before the PTO. While the PTO's decision may well be enlightening, this court cannot stay every

13

> patent case when an interference is declared. . . . Given the advanced stage of the litigation and the potential delay involved in awaiting the PTO's decision on interference, this court exercises its discretion to deny Abbott's motion for a stay.

*Id.*; *see also General Foods Corp. v. Struthers Sci. & Int'l Corp.*, 309 F. Supp. 161, 162 (D.C. Del. 1970) (denying stay where interferences had been declared "long after" the commencement of litigation and "after extensive and expensive discovery proceedings," and also because resolution of the interference proceedings would not entirely dispose of all the issues in the lawsuit). Although Microsoft attempts to distinguish *Chiron* on grounds that the interference in that case was between the plaintiff and a third party, rather than the defendant, Microsoft fails to explain how this distinction is relevant, given that the validity of the patent would be at issue either way.

The court finds the circumstances of this case closer to *Chiron* and *General Foods* than to *Wireless Spectrum Technologies* and *Bayer*. Far from lying dormant, this litigation has, as noted, resulted in a jury verdict and two Federal Circuit appeals in the eight years since Plaintiffs filed suit. More importantly, it is not at all clear that the "brief" continuance Microsoft claims to seek would in any way contribute to the efficient disposition of this action. Although the court cannot predict with any precision what will transpire at the BPAI proceedings, it does not appear that those proceedings will be as brief as Microsoft asserts, nor that the dispositive issues in this suit will indeed be decided in such a short period of time as to warrant further delay in this already-lengthy litigation.

The court notes that both sides effectively ask the court to predict the future. The main thrust of Microsoft's argument is that because the BPAI interference proceeding may result in the '906 claims being declared invalid or awarded to Microsoft, a trial here could be superfluous because any judgment might be rendered moot. To this end, Microsoft predicts that the BPAI will consider and decide issues of invalidity and inequitable conduct within the motions phase, which Microsoft contends will last only eight months. Plaintiffs predict that the BPAI may not reach those issues at all, but may dismiss the interference based on the other, "threshold" issues noted above. Microsoft further predicts that even if the BPAI does not rule in its favor on those issues, the BPAI

14

will nonetheless end up awarding ownership of the '906 claims to Microsoft in light of its status as the "senior party"; Plaintiffs, however, express equal confidence that they will emerge victorious. Both parties go so far as to predict what will happen upon judicial review of the BPAI's decision—an event both parties see as a certainty.

The court is uncomfortable speculating about the BPAI proceedings, though both sides appear to have offered valid reasons for their predictions of victory at the BPAI. Plaintiffs note that the "copied" claims in the Koppolu re-issue application in fact omit several terms from the '906 claims; although the significance of those omissions is not immediately evident to this court, one suspects that those differences will be the subject of discussion at the BPAI. Plaintiffs further note that in finding the interference, the BPAI did not utilize the claim construction for the '906 patent that has been in place throughout this litigation; indeed, the BPAI panel looked to the *Koppolu* specification to find support for the key terms of the '906 claims. (Pl.'s Supp. Resp., at 4-5.) Thus, while that panel construed "browser" so broadly that the term could encompass a word-processing program such as Word, Judge Zagel and the Federal Circuit, construing the term in light of the '906 specification, concluded that "browser application" meant "web browser." Plaintiffs also point to Microsoft's own argument to the Federal Circuit with regard to claim construction, in which Microsoft distinguished Koppolu's OLE technology from the '906 invention; and to "key admissions" by Microsoft's witnesses, including the Koppolu inventors in deposition testimony made confidential under a protective order, which demonstrate, according to Plaintiffs, that Koppolu is very different from the '906 invention. (*Id.* at 3.) When the panel considers this evidence, Plaintiffs maintain, it will find no interference. (*Id.* at 3-6.) Although Microsoft contends that the BPAI already rejected Plaintiffs' arguments in overturning the Examiner's initial interference decision, the BPAI panel, as noted, indicated only that Plaintiffs had filed protests, and did not explain the extent to which it may have considered Plaintiffs' position.

Microsoft emphasizes that as the designated "senior party" in the interference, due to the

15

fact that its initial Koppolu filing pre-dated the '906 filing by six months, Microsoft is entitled to a presumption that it is the prior inventor. (Def.'s Reply, at 2-3.) *See Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989) (party who files later is considered the junior party); 37 C.F.R. §§ 41.201 & 41.207(a)(1) (senior party presumed first inventor). This is, however, a rebuttable presumption, based entirely on filing dates, that Plaintiffs can overcome by demonstrating, under a mere preponderance standard, that they were the first to conceive of the invention. *See Hitzeman v. Rutter*, 243 F.3d 1345, 1353 (Fed. Cir. 2001); 37 C.F.R. § 41.207(a)(2). As Plaintiffs point out, the Federal Circuit noted Judge Zagel's finding that the '906 invention had been reduced to practice no later than January 27, 1994—earlier than the Koppolu filing on April 14, 1994. *See Eolas Techs.*, 399 F.3d at 1329. On the other hand, Defendant cites statistics showing that the senior party prevails in the majority of interference cases. *See* Gerald J. Mossinghoff, *The U.S. First-To-Invent System Has Provided No Advantage for Small Entities*, 84 J. Pat. & Trademark Off. Soc'y 425 (2002) (noting that of 2,858 two-party interferences from 1983-2000, 1,917 were favorable to the senior party (i.e., first to file), and 941 were favorable to the junior party (second to file)). Microsoft further asserts that it will be able to show an even earlier date of invention. (Def.'s Mot., at 3.)

In any event, the court is not inclined to assess the parties' predictions of the outcome of the pending BPAI interference. What the court can determine now is that Microsoft has failed to demonstrate that a 90- or 120-day continuance, or even a continuance until the motions phase of the interference is concluded, would make any real difference here. If Microsoft follows through with its stated intent to file motions at the interference, challenging the validity of the '906 patent or claiming inequitable conduct, it does not appear that the BPAI will decide these motions by "early 2008," as Microsoft claims: briefing in the motions phase is not even currently scheduled to be

complete until March 21, 2008,[5] and, as noted, it is not at all clear when the BPAI will actually rule on those motions. Nothing will have changed with respect to the issues of validity and inequitable conduct until the BPAI rules on those motions, and then only if the BPAI rules in Microsoft's favor—an outcome by no means guaranteed. Indeed, as Microsoft acknowledges, the next step in the interference proceedings, should the '906 claims emerge from the motions phase, is a priority determination that "normally" takes two years. *See* 37 C.F.R. § 41.200(c). It is only during this "priority phase" that the presumption of priority, which Microsoft relies on in predicting that the BPAI will award it ownership of the '906 claims, comes into play.

Nor will the conclusion of the BPAI interference proceedings be the end of the story. As noted, a party dissatisfied with the outcome of an interference can appeal the decision by bringing an action in federal district court. See 35 U.S.C. § 146. The commencement of such an action stays the result of the interference. *Vas-Cath, Inc. v. Curators of Univ. of Missouri*, 473 F.3d 1376, 1382 (Fed. Cir. 2007). The Federal Circuit has thus described an interference proceeding as "a multi-part action with appeal as of right, starting in the PTO and culminating in court. The civil action authorized by § 146 is not a new claim, but an authorized phase of the interference proceeding . . . ." *Id.* Even if Microsoft is successful in the interference, therefore, it does not appear that it would be awarded ownership of the '906 claims until judicial review is complete. *See id.* (patenting process not complete until judicial review complete); *Monsanto Co. v. Kamp*, 360 F.2d 499, 501 (D.C. Cir. 1965) (where patent applicant prevailed over owner of outstanding patent in interference decision, PTO could not issue the second patent while action for review under § 146 pending in court). Microsoft acknowledges that federal court review will likely follow the outcome of the interference, but maintains that this is a reason to grant, rather than deny, a continuance; according

---

[5] The court also notes that just in the three weeks since Microsoft filed its motion for a continuance, asserting that the BPAI interference proceedings would be "conducted on an expedited basis," (Def.'s Mot., at 2), the BPAI pushed back the deadline for the filing of motions lists from June 29 to July 16, 2007. (Post Second Conference Call Order, at 4.)

to Microsoft, it is a "near certainty" that a federal district court will eventually consider the same issues of patentability and validity that will likely be the subject of the impending trial in this court. (Def.'s Reply, at 1.) A continuance would thus preclude the prospect of "two federal court trials instead of one." (*Id.* at 2.) But this argument again forces the court to speculate as to what issues might be raised in the BPAI, what issues might actually be considered and disposed of by the BPAI, and what issues might then be appealed. As noted, Plaintiffs have also identified "threshold" issues of standing and timeliness that might prevent the BPAI from reaching issues of validity and inequitable conduct. Given this uncertainty, the court is unwilling to grant a stay of the present litigation in light of the mere possibility that several years from now, another federal district court might consider similar issues.[6]

Indeed, despite Microsoft's insistence that it seeks only a "brief continuance," the only kind of continuance that would make any sense—if the reason for the continuance is to wait for the BPAI to resolve the issues that are likely to be tried in this case—is an indefinite stay of proceedings. There is no guarantee that the motions phase of the proceedings, which may or may not conclude in March 2008, will yield the kind of results that would facilitate disposition of this litigation; the priority phase will take yet more time; and with likely judicial review, issues raised by the Koppolu interference may not be resolved for years and years. Yet in light of the advanced stage of this litigation, the equities do not warrant an indefinite stay. Microsoft claims that it will be prejudiced because its attorneys, experts, and witnesses will be forced to simultaneously participate here and at the BPAI, (Def.'s Mot., at 8); Plaintiffs face the same hardship, however, and seek no delay.

---

[6] The court is also uncertain as to whether any resolution of an issue in this court would have preclusive effect in a action filed under 35 U.S.C. § 146 for review of the outcome of the interference. Microsoft asserts that any determination of validity in the present lawsuit will have no preclusive effect in the BPAI interference, because of the lower standard of proof faced by a patent challenger in the interference. (Def.'s Supp. Reply, at 4-5.) Assuming this is correct—and the court expresses no opinion on the matter—it is not clear whether the same holds true for a civil action filed under 35 U.S.C. § 146.

Microsoft further contends that because Plaintiffs market no product that utilizes the '906 patent, and because Microsoft has redesigned Internet Explorer so that it no longer infringes the '906 patent, money damages will sufficiently compensate Plaintiffs in the event that they prevail both in the interference and in this case, (*id.* at 10-11); Plaintiffs will thus have suffered no harm from the "modest continuance Microsoft suggests." (Def.'s Supp. Reply, at 8.) As explained, however, any continuance based on the BPAI interference cannot be "modest" and still serve any tangible goal. Moreover, given that this litigation has already produced a jury verdict in Plaintiff's favor—key aspects of which the Federal Circuit affirmed on appeal—the court does not accept the notion that Plaintiffs would suffer no prejudice from a multi-year delay in the final adjudication of this dispute.

Finally, the court is not persuaded that going forward with trial at this time would necessarily constitute an inefficient use of judicial resources. Microsoft is likely correct that if the BPAI interference results in the '906 patent being declared invalid, and its claims awarded to Microsoft, then this lengthy case, which has consumed the resources of this court and the Federal Circuit in its eight-year existence, may have been for naught. But given the extent of proceedings up to this point, the court is not convinced that the additional resources that may be expended in the upcoming trial by both the parties and this court are so great, in comparison to all that has come before in this case, that the court should delay proceedings indefinitely because of the mere possibility that those resources might be saved. Taking into account the prejudice to Plaintiffs and the potential for years upon years of uncertainty and further delay, the court declines to exercise its discretion to grant a stay or a lengthy continuance due to the pending Koppolu interference proceedings.

**CONCLUSION**

For the foregoing reasons, Microsoft's motion for a continuance (693) is denied to the extent it is based on the pending BPAI interference.

ENTER:

Dated: June 26, 2007

*[signature: Rebecca R. Pallmeyer]*
_____
REBECCA R. PALLMEYER
United States District Judge